MALOSH *v.* THOMPSON.

1. Landlord and Tenant—Dangerous Condition—Porch—Notice
   —Repairs—Evidence.
   Evidence *held,* to sustain finding that landlord had notice of
   dangerous condition of porch used with second-story apartment
   and that repairs made were insufficient.

2. Same—Porch—Repairs—Statutes.
   Landlord permitting tenant to occupy second-story apartment
   before term began owed duty to keep porch used therewith in
   good repair (1 Comp. Laws 1929, § 2559).

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 5, 1933. (Docket No. 62, Calendar No. 37,356.)   Decided December 5, 1933.

Case by Walter Malosh against Mrs. George F. Thompson (*alias* Rose M. Thompson) for personal injuries received when porch of apartment collapsed. Judgment for plaintiff.   Affirmed.

*Joseph B. Shivers* (*Owen Rippey,* of counsel), for plaintiff.

*Colby, Berns & Costello,* for defendant.

Sharpe, J.   On July 12, 1932, the plaintiff rented a second-story flat from defendant, situate on Fourteenth street in the city of Detroit.   He paid rent in advance for a month, commencing on August 1st, but had permission to at once move in to clean and make repairs.   On the afternoon of July 13th the plaintiff and his wife and brother were standing on a porch in the rear of the flat.   As his wife stepped from the porch into the flat, the porch gave way and fell to the ground, plaintiff falling with it and sustaining quite severe injuries.

This action is brought to recover the damages incident thereto. On trial before the court without a jury, he had judgment for $1,400, from which defendant has taken this appeal.

The defendant had owned the house for 18 years. It was new when she purchased it. Her son, Ernest, had looked after it for some years and collected the rent for her. Wade B. Thompson was employed by the defendant to rebuild the porch after the accident. He testified:

"There was only one post and that was on the south corner. The north corner was supported by a brace, a 45-degree angle brace. It extended a foot or 18 inches back of the outside edge. The brace on the north side extended out about 4 feet and it hit the wall about 4 feet below the porch on a 45-degree angle. * * * The south corner was probably all right. In the north corner we found three nails. These nails were driven into the shiplap. Had they used a larger nail and nailed into the studdings and nailed over I don't think it would have fell. I think that is the chief cause of the accident, the fact that it wasn't properly fastened in that corner. These nails were three eight-penny common toe nails. The joists in this porch ran north and south with a header at each end. There were three nails like that supposed to hold half of that porch, that is, the north half. * * * I would say it was very poor construction. Any mechanic that would be conscientious at all in doing it right would never construct it that way, because the fact that it fell demonstrates that."

A former tenant, James D. Fowler, who occupied the premises for about 10 years and until about the month of August, 1931, testified that the porch was then supported by two posts, 4 x 4 or 5 x 5 in size, one at each corner; that "one of the posts was

badly decayed. I noticed that about six to ten months before we moved. I told Mrs. Thompson's son about it, and he said he would take it up with his mother. This is the same son that sometimes came around to collect rent. I don't know what the condition of the post was, that is, whether there was a footing underneath the post or not. I didn't dig down to see, but the post was practically rotted off, that is, one of the supporting posts;" and that he told the tenant who occupied the upper story "not to go on the porch until it was fixed."

Defendant's son, Ernest, denied that Fowler had ever spoken to him about the porch being out of repair. He testified that "there has never been any change in the construction of the porch;" that he examined the porch and that "it appeared all right."

The negligence complained of was the "failing to have said porch constructed in such a manner that it would be reasonably safe for the plaintiff's use." The evidence justified a finding that Fowler called the attention of defendant's son to its dangerous condition, and that it was repaired but in a manner that did not remove the danger incident to its use. It was the duty of the defendant, when she permitted the plaintiff to occupy the second story of the building, to see to it that the porch used therewith was in good repair. The statute (1 Comp. Laws 1929, § 2559) imposed the duty upon her. It seems clear that she did not discharge it, and that plaintiff's injury was due thereto. *Samuelson* v. *Cleveland Iron Mining Co.,* 49 Mich. 164 (43 Am. Rep. 456); *McIntyre* v. *Detroit Safe Co.,* 129 Mich. 385; *Annis* v. *Britton,* 232 Mich. 291.

The judgment is affirmed.

McDONALD, C. J., and WEADOCK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.