DA 13-0448

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 127

DEBORAH DULANEY,

> Plaintiff and Appellant,

v.

STATE FARM FIRE AND CASUALTY INSURANCE
COMPANY, and SHAWN ORI, Agent,

> Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Second Judicial District, In and For the County of Silver Bow, Cause No. DV 12-247 Honorable Brad Newman, Presiding Judge |

COUNSEL OF RECORD:

> For Appellant:
>
> Stephanie Gehres Kruer, Kruer Law Firm, P.C., Sheridan, Montana
>
> For Appellees:
>
> Gary L. Walton, Gary L. Walton, PLLC, Butte, Montana

Submitted on Briefs: April 2, 2014
Decided: May 13, 2014

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Deborah Dulaney appeals from an order of the Second Judicial District Court, Silver Bow County, granting summary judgment in favor of defendants State Farm Casualty Insurance Co. and insurance agent Shawn Ori. We affirm. Dulaney's sole argument on appeal is that the District Court erred in granting summary judgment in favor of State Farm and Ori.

## BACKGROUND

¶2 Dulaney operated a floral shop in Whitehall from 2001 to 2006. During these years, her business was insured by a State Farm insurance policy, which she purchased from Ori. In November of 2007, after reopening her business in a new location, Dulaney met with Ori to discuss purchasing a policy for her new business. During this meeting, Dulaney told Ori that she needed insurance coverage for a new "huge" building she was renting, that her landlord required $1,000,000 in liability insurance, and that she needed to be adequately insured.

¶3 Dulaney claims that she told Ori that she had "absolutely no idea" of the value of the property she wanted insured, and that she wanted Ori to come out and see the business for himself. Dulaney maintains that she never asked for a specific amount of coverage, or told Ori to use the same coverage limit that she had for her former business. Ori, on the other hand, contends that during their meeting Dulaney "informed him that her former business property limit was sufficient for the business."

¶4 Dulaney's 2007 tax return valued her business property at $9,825. Dulaney maintains, however, that the value of her business greatly exceeded this amount. Ori had

no knowledge of any valuation or inventory of Dulaney's business at the time Dulaney purchased the policy. When Dulaney and Ori met in November of 2007, an insurance application was prepared that indicated on its face a $20,000 coverage limit for business personal property and a $1,000,000 coverage limit for business liability. The record does not establish whether Dulaney signed the application. Dulaney maintains she has no recall of whether she assisted in or was present while the application was being filled out. It is undisputed that Ori never inspected the premises of Dulaney's business, or agreed to do so. The application was finalized, and Dulaney's coverage began.

¶5      After obtaining the policy, Dulaney made significant purchases for her business, including a $10,000 walk-in cooler, a $2,000 espresso machine, and a $7,000 business software system. She did not contact Ori to inform him of these purchases, or any other added inventory or equipment. In 2008, Dulaney received a renewal notice from Ori, which again disclosed the limits of coverage under the policy. Dulaney never requested any additional business property coverage after her November 2007 meeting with Ori.

¶6      In 2009, Dulaney's floral shop was destroyed by a fire that started in a neighboring business. Dulaney sued the neighboring business, and the case was settled before it went to trial. State Farm paid Dulaney the maximum amount available under her policy, which was approximately $21,105. Dulaney maintains that Ori's professional negligence caused her over $190,000 in damages to her business. She filed a complaint against Ori with the State of Montana Insurance Commissioner, which was dismissed. Next, Dulaney filed suit against State Farm and Ori, arguing that Ori, acting as State Farm's agent, had a professional duty to ascertain or advise her of the adequate amount of

3

coverage for her business, and his failure to do so constituted professional negligence. State Farm and Ori disclosed multiple expert witnesses that were to testify as to the standard of care required of an insurance agent. At no time did Dulaney disclose an expert witness, although she did disclose multiple lay witnesses. State Farm and Ori then filed a motion in limine to preclude Dulaney from calling an expert to testify on her behalf, arguing that she had missed the disclosure deadline imposed by the District Court's scheduling order. Dulaney responded that she did not fail to disclose an expert witness, but that she "intentionally did not disclose an expert witness as she does not intend to use one." Dulaney did include her current insurance agent Leo McCarthy on her witness list, but she did not identify that he would be testifying as an expert pursuant to the requirements of M. R. Civ. P. 26(b)(4).

¶7 On April 1, 2013, State Farm and Ori jointly moved for summary judgment, citing Dulaney's failure to name an expert witness to establish the standard of care applicable to an insurance agent. On July 1, 2013, the District Court granted summary judgment in favor of State Farm and Ori. The District Court held that expert testimony was required to establish the standard of care to which Ori was required to conform. The court explained that the "ordinary lay juror has little or no experience regarding the factors a professional insurance agent must consider when obtaining general business insurance at the request of a client, or concerning the adequacy of the amount of coverage at the time of its procurement." The District Court then distinguished the present case from prior precedent, including *Fillinger v. Northwestern Insurance Agency, Inc., of Great Falls*, 283 Mont. 71, 938 P.2d 1347 (1997). The District Court determined that Dulaney could

4

not meet her burden of establishing a prima facie case of professional negligence against Ori. Dulaney now appeals from that order.

## STANDARD OF REVIEW

¶8 We review a district court's ruling on a motion for summary judgment de novo, applying the criteria set forth in M. R. Civ. P. 56. *Yorlum Props. v. Lincoln Co.*, 2013 MT 298, ¶ 12, 372 Mont. 159, 311 P.3d 748. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

## DISCUSSION

¶9 ***Whether the District Court erred in granting summary judgment to State Farm and Ori.***

¶10 Dulaney asserts a claim of professional negligence against Ori and State Farm. Four elements are required to prove a claim for negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Dubiel v. Mont. Dept. of Transp.*, 2012 MT 35, ¶ 12, 364 Mont. 175, 272 P.3d 66; *W. Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 22, 359 Mont. 34, 249 P.3d 35. "It is well established that if a plaintiff fails to offer proof of any one of the elements of a negligence claim, the negligence action fails and summary judgment in favor of the defendant is proper." *Dubiel*, ¶ 12 (citing *Peterson v. Eichhorn*, 2008 MT 250, ¶ 24, 344 Mont. 540, 189 P.3d 615; *Hinkle ex rel. Hinkle v. Shepherd Sch. Dist. # 37*, 2004 MT 175, ¶ 23, 322 Mont. 80, 93 P.3d 1239). As a general rule, negligence claims are not susceptible to summary judgment determinations because they are fact

driven. *Willden v. Neumann*, 2008 MT 236, ¶ 14, 344 Mont. 407, 189 P.3d 610. However, an exception to this rule exists where a plaintiff fails to offer proof of any one of the elements of a negligence claim. *Dubiel*, ¶ 12 (citing *Peterson*, ¶ 24; *Hinkle*, ¶ 23).

¶11 In this case, Dulaney claims that Ori had a duty to ascertain the value of Dulaney's business property and inventory in order to make sure that her insurance policy would adequately cover her business assets. She asserts that Ori breached this duty, and that had Ori inspected her business, he would have advised her to purchase an insurance policy with a higher coverage limit.

¶12 "To determine if a defendant breached a duty of care, a plaintiff must establish the standard of care by which to measure the defendant's actions; in other words, she must establish the degree of prudence, attention, and caution the defendant must exercise in fulfilling that duty of care." *Dubiel*, ¶ 14 (citing *Dalton v. Kalispell Regl. Hosp.*, 256 Mont. 243, 247, 846 P.2d 960, 962 (1993)). M. R. Evid. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." We have previously held that:

> It is the rule in Montana that expert testimony is required as to the standard of care, and as to the professional's violation of that standard of care, before a trier of fact may find such professional negligent. . . . The rationale for requiring expert testimony to establish a standard of care for professionals acting in their professional capacity is that such professionals are required to possess a minimum standard of special knowledge and ability, and as a result juries which are composed of laypersons are normally incompetent to pass judgment on such questions without the assistance of expert testimony.

6

*Newville v. Dept. of Family Servs.*, 267 Mont. 237, 257, 883 P.2d 793, 805 (1994) (citing *Carlson v. Morton*, 229 Mont. 234, 239-40, 745 P.2d 1133, 1137 (1987)).

¶13 Dulaney argues that the standard of care of an insurance agent procuring coverage is a matter of common knowledge, and does not involve overly technical, scientific, or specialized knowledge. She maintains that her case is "the mirror image" of *Fillinger*, in which we held "in the context of an insurance agent's alleged failure to procure requested coverage, expert testimony is not required as the issue is not one which involves technical insurance issues outside the common experience and knowledge of lay jurors." *Fillinger*, 283 Mont. at 84, 938 P.2d at 1356; s*ee also Gay v. Lavina State Bank*, 61 Mont. 449, 458, 202 P. 753, 755 (1921). Ori and State Farm counter that *Fillinger* is factually distinguishable, because Dulaney does not argue that Ori failed to procure requested coverage, but rather, that Ori should have done more to make sure Dulaney's coverage was adequate.

¶14 We conclude that Dulaney's reliance on *Fillinger* is misplaced, because Dulaney did not make a request for specific coverage. In *Fillinger*, the issue was whether or not the insurance agent provided the insureds with the coverage they requested. It was undisputed that the insureds had requested a specific policy, and that they did not receive that policy. We held "the determination of whether an insurance agent reasonably fulfilled his or her duty and procured the coverage requested is easily within the common experience and knowledge of lay jurors" and thus, the testimony of an expert witness was not required. *Fillinger*, 283 Mont. at 83-84, 938 P.2d at 1355. Here, unlike in *Fillinger*, Dulaney's damages allegedly resulted from Ori's failure to procure a policy that

adequately covered her business assets—not from Ori's failure to procure a specific type of policy that Dulaney indisputably requested. Thus, the question of duty here goes beyond that articulated in *Fillinger*, and requires the testimony of an expert witness to establish the relevant factors that an insurance agent should consider when procuring insurance coverage in these circumstances.

¶15 Dulaney's case is instead controlled by our holding in *Dubiel*. In *Dubiel*, a wife brought a negligence and wrongful death action against the Department of Transportation (the Department) after her husband died when a tree fell on his vehicle while he was stopped on the highway awaiting road clearance during a wind storm. *Dubiel*, ¶ 1. While the wife retained an economic expert to establish her husband's lost earnings, she did not retain an expert to establish the Department's standard of care regarding highway safety under the circumstances leading to her husband's death. *Dubiel*, ¶ 4. The district court granted the Department's motion for summary judgment because of the wife's failure to retain an expert to testify regarding the standard of care. We affirmed, stating that there were "numerous interrelated factors that must be considered by [the Department] in making a decision to close a road, many of which are not readily apparent to a layman." *Dubiel*, ¶ 18. Our holding in *Dubiel* is echoed by a number of cases in which we have determined that expert testimony is required to determine the standard of care for a wide variety of professions whose duties are not obvious to a layperson. *See Dayberry v. City of E. Helena*, 2003 MT 321, ¶ 21, 318 Mont. 301, 80 P.3d 1218 (in a suit against a swimming pool operator, whether the depth of a swimming pool was unreasonably dangerous for the diving board length required expert testimony); *Carlson*, 229 Mont. at

8

241, 745 P.2d at 1138 (whether a lawyer breached the applicable standard of care in a legal malpractice suit required expert testimony); *Mont. Deaconess Hosp. v. Gratton*, 169 Mont. 185, 189-90, 545 P.2d 670, 672-73 (1976) (whether doctors breached the applicable standard of care in a medical malpractice suit required expert testimony); *Hill v. Squibb & Sons*, 181 Mont. 199, 207, 592 P.2d 1383, 1388 (1979) (whether a warning on package inserts from pharmaceutical manufacturers and distributors was adequate required expert testimony); *Doble v. Lincoln Co. Title Co.*, 215 Mont. 1, 5, 692 P.2d 1267, 1270 (1985) (whether a title insurance company breached a standard of care required expert testimony); *May v. Era Landmark Real Estate*, 2000 MT 299, ¶ 70, 302 Mont. 326, 15 P.3d 1179 (plaintiff's claim for professional negligence required the submission of expert testimony to prove the standard of care of a real estate broker).

¶16　　As in *Dubiel*, there are in this case multiple factors in play that "are sufficiently beyond the common experiences of jurors." *Dubiel*, ¶ 15.　Dulaney alleged in her complaint that her agent had "the legal duty" to ascertain the amount of insurance coverage she needed.　She argued that it was incumbent upon Ori to view the contents of her store and determine the value of her personal property, inventory, and supplies.　She argues on appeal that he should have looked at her business property, given her advice on coverage options, "maybe even looking at her depreciation schedules, and sitting down with her and assisting her in creating a plan to make sure her business needs are covered."　She thus ascribes to her agent expansive legal duties and obligations for which her agent denies responsibility.　It also bears noting that in denying her complaint, the

9

Insurance Commissioner concluded that "it is the responsibility of the insured to determine the amount of coverage they [sic] need."

¶17 The only way for a jury to resolve whether an insurance agent placing a business policy had the legal duty to perform the foregoing tasks would be to receive expert testimony on the duties of an insurance agent under these circumstances. Among the questions that would be squarely before the jury are whether it is the obligation of the insured or the agent to place a value on an owner's property and inventory, and whether it is incumbent on the insured or the agent to monitor the insured's ongoing property acquisitions and periodically suggest an upgrade in coverage amounts. Because the answers to these questions would not be readily apparent to a layperson, expert testimony on the nature and extent of an agent's duties was required.

¶18 As *Fillinger* illustrates, not every claim against an insurance agent will require the testimony of an expert. For the foregoing reasons, however, we conclude that it was incumbent on Dulaney to provide expert testimony to support her allegation that her agent carried certain legal duties which he breached to her detriment.

¶19 Dulaney also argues that summary judgment was improper because even if an expert witness was necessary, the fact that insurance agent Leo McCarthy was on her witness list, and that Ori himself was on the defense's witness list, satisfied that requirement. She cites to *Fillinger* to support this conclusion, claiming that the defendant insurance agent's testimony in that case satisfied any requirement that the plaintiffs provide their own expert. However, neither Ori nor McCarthy were listed as expert witnesses for Dulaney. Instead, Dulaney "intentionally did not disclose an expert

witness, as she [did] not intend to use one." Thus, the fact that Dulaney disclosed McCarthy as a lay witness and that State Farm and Ori disclosed Ori as an expert witness was insufficient to satisfy Dulaney's obligation to designate an expert pursuant to the requirements of M. R. Civ. P. 26(b)(4) and *Dubiel*.

¶20 Dulaney additionally argues that material facts are in dispute—namely, whether Dulaney requested a specific policy, and whether Ori provided that policy—and thus summary judgment was improper. However, Dulaney did not raise this issue before the District Court, and she repeatedly testified that she did not request a specific policy from Ori. Regardless of whether material disputed facts exist, Dulaney's failure to retain an expert witness as to the standard of care prevents her from establishing a prima facie case of professional negligence. "A complete failure of proof concerning an essential element of a claim makes judgment appropriate as a matter of law." *Monroe v. Cogswell Agency*, 2010 MT 134, ¶ 34, 356 Mont. 417, 234 P.3d 79; *see also Dubiel*, ¶ 12. As such, no further review of the facts is necessary.

## CONCLUSION

¶21 We conclude that Dulaney's failure to obtain an expert witness necessarily results in an insufficiency of proof regarding duty, and prevents Dulaney from establishing a prima facie claim of negligence. We affirm.

/S/ LAURIE McKINNON

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

11